# 23-770-cv(L)

## 23-771-cv(CON)

IN THE

# United States Court of Appeals

### FOR THE SECOND CIRCUIT



SELENA STALEY, on behalf of themselves and all others similarly situated, VIVIAN HOLMES, on behalf of themselves and all others similarly situated, OLIVE IVEY, on behalf of themselves and all others similarly situated,

*Plaintiffs-Appellees,*

*(Caption Continued on the Reverse)*

———————————

*On Appeal from the United States District Court
for the Southern District of New York*

## BRIEF FOR PLAINTIFFS-APPELLEES

Maya Risman
RISMAN & RISMAN, P.C.
299 Broadway, 17th Floor
New York, New York 10007
212-233-6400

Brian L. Bromberg
BROMBERG LAW OFFICE, P.C.
352 Rutland Road, #1
Brooklyn, New York 11225
212-248-7906

Evan C. Brustein
BRUSTEIN LAW PLLC
299 Broadway, 17th Floor
New York, New York 10007
212-233-3900

*Attorneys for Plaintiffs-Appellees*



*v.*

HOTEL 57 SERVICES, LLC, HOTEL 57, LLC, TY WARNER HOTELS
& RESORTS, LLC, H. TY WARNER, FSR INTERNATIONAL HOTEL INC.,
DBA FOUR SEASONS HOTELS AND RESORTS,

*Defendants-Appellants,*

*and*

FOUR SEASONS HOTELS AND RESORTS,

*Defendants.*

# Table of Contents

*Table of Authorities*........................................................................ *iii*

*Jurisdictional Statement and Statement of the Case*............................1

*Statement of the Issues Presented for Review*.........................................1

*Statement of Facts*............................................................................2

*Standard of Review* ........................................................................10

*Summary of Argument*....................................................................10

*Argument* ........................................................................................15

   I.   Standard on motion to compel arbitration ....................................15

   II.  The district court properly denied Defendant-Appellants' motion to compel arbitration of claims for permanent layoffs and no-fault terminations, which were expressly excluded from the arbitration agreement. ...................................................................................18

      A.  The EmPact Agreement includes a non-arbitration clause, which through its plain language, excludes Plaintiff-Appellees' claims ....18
      B.  A layoff exceeding six months is a permanent layoff and a no-fault termination; a permanent layoff cannot provide for a right of recall as permanent is forever ...........................................................23

   III. The claims in this action are related to Plaintiffs' permanent layoffs and no-fault terminations, and not any other type of termination of employment that would allow for arbitration .............27

      A.  Plaintiff-Appellees have alleged claims for No-Fault Termination and Permanent layoff ....................................................28
      B.  Plaintiff-Appellees' WARN Act claims are related to no-fault terminations and/or permanent layoffs.............................................30
      C.  Plaintiff-Appellees have not alleged that they were "constructively discharged".................................................................32

   IV. This Court lacks jurisdiction to hear Defendants' interlocutory appeal of the denial of their motions to strike Plaintiffs' class claims, inasmuch as Defendants have not petitioned for leave to take an interlocutory appeal ..............................................................................35

V.   Even if this Court were to find jurisdiction over Defendants' class-action-waiver appeal, the district court correctly held that Plaintiffs never waived their right to bring or participate in class actions related to their permanent layoffs or no-fault terminations............................37

VI. Defendants' equitable estoppel claim is premature, because the Court has not compelled arbitration .....................................................42

VII. The parties did not clearly and unmistakably delegate to an arbitrator the question of arbitrability of Plaintiffs' claims................42

VIII. The "clear and unmistakable evidence" is that the parties agreed not to delegate the question of arbitrability of "permanent lay-off" or "'no fault' termination" disputes ............................................................43

IX. The EmPact Agreement does not incorporate the AAA rules with respect to Plaintiffs' claims....................................................................46

X.   Since the parties did not delegate to an arbitrator the question of arbitrability of disputes concerning "permanent layoff" and "'no-fault' termination," the Supreme Court's decision in *Henry Schein, Inc.* does not apply ..................................................................................................53

*Conclusion*................................................................................................*55*

*Certificate of Compliance*.......................................................................*57*

# Table of Authorities

**Page(s)**

## Cases

*Archer & White Sales, Inc. v. Henry Schein, Inc.*,
935 F.3d 274 (5th Cir. 2019).................................................................. 54

*AT&T Mobility, LLC v. Concepcion*,
563 U.S. 333, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011)....................... 17

*Boshears v. PeopleConnect, Inc.*,
76 F.4th 858 (9th Cir. 2023) ..................................................... 1, 10, 35

*Contec Corp. v. Remote So. Co., Ltd.*,
398 F.3d 205 (2d Cir. 2005) ......................................................... 48, 49

*DDK Hotels, LLC v. Williams-Sonoma, Inc.*,
6 F.4th 308 (2d Cir. 2021)........................................................... *passim*

*Dreyfuss v. Etelecare Glob. Sols.-U.S. Inc.*,
349 F. App'x 551 (2d Cir. 2009) ......................................................... 22

*Emilio v. Spring Spectrum L.P.*,
508 F.App'x. 3 (2d Cir. 2013) ............................................................ 49

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995).................................................................... 43, 53

*Galli v. Metz*,
973 F.2d 145 (2d Cir. 1992) ............................................................... 37

*Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*,
815 F2d 840 (2d. Cir. 1987) ............................................................... 27

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
139 S. Ct. 524 (2019).................................................................. 53, 54

*Hines v. Overstock.com, Inc.*,
668 F.Supp.2d 362 (E.D.N.Y. 2009), *aff'd*, 380 F. App'x. 22
(2d Cir. 2010)........................................................................... 16

*Int'l Eng. & Constr. S.A. v. Baker Hughes*,
  399 F.Supp.3d 194 (2d Cir. 2019) .......................................................... 50

*Johnson v. Parts Auth., LLC*,
  No. 16-CV-6852 (DLI) (RML), 2017 WL 9511079
  (E.D.N.Y. Aug. 17, 2017), *report and recommendation*
  *adopted as modified,* No. 16-CV-6852 (DLI) (RML), 2017
  WL 4402463 (E.D.N.Y. Sept. 30, 2017) ............................................... 16

*Kader v Paper Software, Inc.*,
  111 F.3d 337 (2d Cir. 1997) ................................................................. 33

*Kerin v. Postal Serv.*,
  116 F.3d 988 (2d Cir. 1997) ........................................................... 19, 20

*Lavvan, Inc. v. Amyris*,
  No. 21-1819, 2022 WL 4241192 (2d Cir. Sept. 15, 2022) ............. 44, 45

*McCarthy v. Am. Int'l Grp., Inc.*,
  283 F.3d 121 (2d Cir. 2002) ................................................................. 22

*Metro. Life Ins. Co. v. Bucsek*,
  919 F.3d 184 (2d Cir. 2019) .................................................... 14, 53, 54

*Morgan v. Sundance, Inc.*,
  596 U.S. 411, 142 S.Ct. 1708, 212 L.Ed.2d 753 (2022)................. 17, 18

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.*,
  460 U.S. 1 (1983) ................................................................................. 17

*Murray v. UBS Securities, LLC*,
  No. 12 Civ. 5914, 2014 WL 285093 (S.D.N.Y. Jan. 27,
  2014) .............................................................................................. 50, 51

*NASDAQ OMX Grp., Inc. v. UBS Secs., LLC*,
  770 F.3d 1010 (2d Cir. 2014) ..................................................... *passim*

*Nicosia v. Amazon.com, Inc.*,
  834 F.3d 220 (2d Cir. 2016) .......................................................... 15, 16

iv

*Nicosia v. Amazon.com, Inc.*,
   834 F3d 220 (2d Cir. 2016) ................................................................. 27

*Pennsylvania State Police v. Suders*,
   542 U.S. 129 (2004) ............................................................................ 33

*Pictet Funds [Eur.] S.A. v. Emerging Managers Grp., L.P.*,
   No. 14-CV-6854 SAS, 2014 WL 6766011 (SDNY Dec. 1,
   2014) .................................................................................................. 22

*Revson v. Cinque & Cinque, P.C.*,
   221 F.3d 59 (2d Cir.2000) ................................................................... 22

*Schnabel v. Trilegiant Corp.*,
   697 F3d 110 (2d Cir. 2012) ................................................................. 23

*Staley v. Hotel 57 Services, LLC*,
   No. 22-CV-6781, ___ F.Supp.3d ___, 2023 WL 4339678
   (S.D.N.Y. July 5, 2023) ............................................................ *passim*

*UBS Securities LLC v. Prowse*,
   No. 20CV217, 2020 WL 433859 (S.D.N.Y. Jan. 27, 2020)........... 49, 50

*Westchester Resco Co., L.P. v. New England Reins. Corp.*,
   818 F.2d 2 (2d Cir.1987) (per curiam)................................................. 22

*Whidbee v. Garzarelli Food Specialties, Inc.*,
   223 F.3d 62 (2d Cir. 2000) ............................................................ 33, 34

## Statutes

Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*.................................. *passim*

N.Y. Worker Adjustment and Retraining Notification Act, 12
   NYCRR 921-1.0, *et seq.* ............................................................. *passim*

U.S. Worker Adjustment and Retraining Notification Act, 29
   U.S.C. § 2101, *et seq.* ................................................................ *passim*

## Other Authorities

WARN Act Regulation, 20 C.F.R. § 639.3(f)............................................ 32

v

*Britannica Dictionary.* Available at:
https://www.britannica.com/dictionary/permanent
(Accessed Nov. 13, 2023) .......................................................... 24

Fed. R. Civ. P. 23(f) ...................................................................... 36

## Jurisdictional Statement and Statement of the Case

Plaintiff-Appellees adopt Defendant-Appellants jurisdictional statements regarding their right under 9 U.S.C. § 16(a)(1)(B) of the Federal Arbitration Act ("FAA") to take an immediate appeal from the order denying their motions to compel arbitration. This Court does not, however, have jurisdiction over Defendant-Appellants' appeal from the district court's denial of their motions to strike or dismiss Plaintiff-Appellees' class claims and allegations.[1]

## Statement of the Issues Presented for Review

Whether the district court correctly denied Defendants' motion to compel arbitration where Plaintiffs have brought claims related to their "permanent layoffs" and "'no-fault' terminations," and the plain language of their employment agreements specifically excluded those types of claims from arbitration.

Whether this Court has jurisdiction, under the Federal Rules of Appellate Procedure to even consider Defendants' interlocutory appeal of the denial of their motion to strike class claims, where the only basis for appellate jurisdiction is to review the interlocutory order denying

---

[1] *See Boshears v. PeopleConnect, Inc.*, 76 F.4th 858 (9th Cir. 2023).

1

Defendants' motion to compel arbitration under the Federal Arbitration Act.

Even if this Court has jurisdiction to consider the class claims, whether the Court correctly found that Plaintiffs never waived their right to bring the class claims at issue in this action.

### Statement of Facts

From March 2020, Plaintiffs and those similarly situated who once worked at the Hotel were placed on furlough for an indefinite period.[2] As of the date Defendants moved to compel arbitration, none of the named Plaintiffs and those similarly situated had been brought back to work at the Hotel.[3]

The employment arrangement between the parties was governed by each Plaintiff's EmPact Agreement with the Hotel.[4] The EmPact Agreement constitutes a valid contract between Plaintiffs and Defendants, and, notably, contains an arbitration provision for only four categories of claims:

---

[2] *See* Complaint, JA-15-50, at JA-16, ¶ 2.
[3] *See* Complaint, JA-30 at ¶¶ 120 - 121.
[4] *See* EmPact Agreement, JA-61-122 (incorrect version) and JA-150-210 (correct version).

2

**MEDIATION/ARBITRATION**. If I am not satisfied with [prior resolution of a written complaint] and the complaint is based on one of the following types of claims as defined by law:

a.   employment discrimination;

b.   harassment as it related to my employment;

c.   a wage or hour violation;

d.   or termination of my employment from the Hotel  (including "constructive discharge", **but not a permanent layoff);**

then I must submit my complaint to be heard by an independent mediator/arbitrator unless I have chosen to opt out of the mediation/arbitration provisions.[5]

Within the arbitration section of the EmPact Agreement are 14 subsections that detail the terms of the arbitration agreement: (1) Mediation/Arbitration Demand; (2) What is Mediation/Arbitration; (3) Selection of the Mediator/Arbitrator; (4) Arbitration Will Be Final and Binding; (5) Use of Legal Counsel; (6) Arbitration Fees and Expenses; (7) Award of Costs; (8) Waiver of Right to Go to Court; (9) Waiver of Right to Submit Claim as Part of Class or Collective Action; (10) My Part of the Arbitration Fee; (11) Effect of Filing with EEOC or Other Governmental Agency; (12) Application of Discrimination Laws; (13) Consideration; and (14) Discovery and Judicial Review.[6] None of these

---

[5] *See* EmPact Agreement, at JA-115 and JA-203 (emphasis added).

[6] *See* EmPact, at JA-115-117 and JA-203-205.

3

subsections appear as standalone sections in the EmPact Agreement's

Table of Contents. Rather the only place these subsections appear in the

EmPact Agreement are within the Mediation/Arbitration Clause.[7]

Attempting to apply these 14 subsections to anything beyond the claims

subject to the Mediation and Arbitration Clause is not only illogical but

contrary to a plain language of the contract.[8]

     The section of the EmPact Agreement discussing the "Complaint,

Arbitration & Review for Employees (C.A.R.E.)" claims, define which

claims are covered and which claims are not covered by C.A.R.E:

    a.    employment discrimination;
    b.    harassment as it related to my employment;
    c.    a wage or hour violation;
    d.    or termination of my employment from the Hotel (including "constructive discharge", **but not a permanent layoff**)[9]

The C.A.R.E. section further references a waiver of class claims

with respect only to the C.A.R.E. claims. After identifying the

---

[7] *See* Empact Agreement, at JA-63-64 and 152-153.

[8] For example, the subsection directly after the class waiver subsection is titled "My Part of the Arbitration Fee." As such, there is no plausible explanation for applying a subsection about arbitration fees to claims that cannot be arbitrated. Similarly, the other subsections, including the class waiver, should not be applied to the claims at issue in this action.

[9] *See* EmPact, at JA-115 and JA-203.

4

claims covered by C.A.R.E. and excluded from C.A.R.E., the C.A.R.E. section explains rules governing the C.A.R.E. claims. These rules implicitly are related only to the C.A.R.E. claims and must be read as to the plain language of what the C.A.R.E. claims actually are. Accordingly, the class waiver which states: "To the extent permitted by law, I understand that if I do not opt out *of the mediation/arbitration provisions of C.A.R.E.*, I waive my right to have my claims submitted as part of a class or collective action in court . . ."[10] only pertains to claims specifically governed by the C.A.R.E. section.

In addition to the arbitration section of the EmPact Agreement, the Table of Contents also lists a separate and distinct section titled "No-Fault Separation Pay."[11] The no-fault section states, "If I receive a permanent layoff with no right of recall or I am terminated for no fault, my termination will be considered 'no-fault.'" It is undisputed that the EmPact Agreement states, "I understand that I *may not seek mediation or arbitration* of a permanent layoff or 'no-fault' termination under Step

---

[10] *See* EmPact Agreement, at JA-117 and JA-205 (emphasis added).
[11] *See* Empact Agreement, at JA-64 and JA-153.

6 of C.A.R.E."[12] This provision in the EmPact Agreement specifically prohibits Plaintiffs from seeking arbitration for permanent layoffs or no-fault terminations.

The EmPact Agreement also states: "[h]owever, in the event of a permanent layoff or 'no-fault' termination, I will be eligible for separation pay in accordance with the 'No-Fault Separation Pay Schedule' in effect at the time of my separation unless I have opted out...," which is what Plaintiffs and those similarly situated have not been paid, but are demanding here.[13]

Plaintiff Staley worked at the Hotel for approximately 12 years, and Plaintiffs Holmes and Ivey each worked for the Hotel for approximately 24 years.[14] On or about March 2020, Defendants placed Plaintiffs and those similarly situated on unpaid furlough.[15]

Unfortunately, Defendants placed Plaintiffs on an indefinite furlough to avoid their legal obligations and have not reopened the Hotel to avoid Defendants' contractual obligations to either pay the

---

[12] *See* EmPact Agreement, at JA-117 and JA-205 (emphasis added).
[13] *Id.*
[14] *See* Compl., JA-18-19, at ¶¶ 17 – 19.
[15] *See* Compl., JA-28, at ¶¶ 105 -107.

salaries of Plaintiffs and other similarly situated employees, or pay their No-Fault Separation Pay.[16] First, Defendants told Plaintiffs that the Hotel could not open because of COVID.[17] Then, Defendants blamed consumer demand and financial viability for not reopening.[18] Finally, Defendants told Plaintiffs that the Hotel would not reopen because the Hotel had to undergo substantial renovations.[19]

On August 9, 2022, Plaintiffs brought this action, alleging that their furloughs of more than six months amounted to "permanent layoffs," and, therefore, entitled them to both proper WARN Notice payments, under both the Federal Worker Adjustment and Retraining Notification (WARN) Act[20] and New York WARN Act,[21] and No-Fault Separation Pay under their EmPact Agreement.[22]

---

[16] *See* Compl., JA-17, at ¶¶ 11, and JA-35, at ¶ 157.

[17] *See* Compl., JA-34 at ¶ 156.

[18] *Id.*

[19] *Id.*

[20] U.S. Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101, *et seq.*

[21] N.Y. Worker Adjustment and Retraining Notification Act, 12 NYCRR 921-1.0, *et seq.*

[22] *See* Compl., at JA-40-41, at ¶¶ 188 – 191, JA-42-43, at ¶¶ 204-207, JA-44, at ¶¶ 215, 218, JA-46, at ¶ 233, and JA-47, at ¶ 250.

Both the Federal WARN Act and the New York WARN Act define layoffs extending more than six months as a "permanent layoff" or job termination. Despite terminating the employment of the Plaintiffs and other similarly situated employees in New York, and making their layoffs permanent, Defendants have not paid Plaintiffs the No-Fault Separation Pay owed to them as per the EmPact Agreement.[23] While Plaintiffs' layoffs may have initially been referred to as "temporary," once the layoffs exceeded six months, the layoffs became "permanent layoffs," and required compliance with the WARN Acts.[24] The Hotel had previously claimed that it would reopen once pandemic conditions improved, and demand increased.[25] But more than three years later, Plaintiffs and those similarly situated had not been brought back to work, and the Hotel remained closed, with no notice from the Defendants as to when and if the Hotel would ever reopen.[26]

Faced with Defendants' motions to compel arbitration and strike class claims, the Honorable Jed S. Rakoff, U.S. District Judge, denied

---

[23] *See* Compl., JA-17, at ¶ 7.
[24] *See* Compl., JA-29, at ¶¶ 116 - 117.
[25] *See* Compl., JA-31, at ¶¶ 130 - 132.
[26] *See* Compl., JA-41 at ¶ 196.

the motion to compel on the grounds that the arbitration provisions specifically excluded claims for permanent layoffs and no-fault termination and that by any reasonable construction, layoffs that lasted more than six months—and here for more than three years—constituted permanent layoffs under the EmPact Agreement.[27] Judge Rakoff also held that since the class-action waiver was an integral part of the section of the agreement governing the arbitration clause, it only took effect when the EmPact Agreement required arbitration and not where, as here, the EmPact Agreement excluded arbitration for permanent layoffs and no-fault termination.[28] Although this Court only has jurisdiction to review the district court's denial of the motions to compel, Defendants are not only appealing that denial but are also improperly seeking to take an interlocutory appeal from the district court's denial of the motion to strike class claims.[29]

---

[27] *Staley v. Hotel 57 Services, LLC*, No. 22-CV-6781, ___ F.Supp.3d ___, 2023 WL 4339678 (S.D.N.Y. July 5, 2023); Special Appendix (SPA)-2-17.
[28] *Id.*
[29] *See* Notices of Appeal and Amended Notices of Appeal at JA-428-437.

## Standard of Review

The standard of review for denial of a motion to compel arbitration, as well as the issue of whether arbitrability is for the court or the arbitrator, is *de novo*.[30] There is no standard of review for denial of a motion to strike class claims in a complaint, because in the absence of certification of such an issue for interlocutory appeal, this Court lacks jurisdiction over any such appeal.[31]

## Summary of Argument

Plaintiff-Appellees Selena Staley, Vivian Holmes, and Olive Ivey ("Plaintiffs" or "Appellees") brought this action on behalf of themselves and those similarly situated, who once worked at the Four Seasons Hotel, located at 57 East 57th Street, New York, New York, known as the "Four Seasons Hotel New York" and/or "Four Seasons New York" ("The Hotel") against the Defendant-Appellants, for Defendants': (1) failure to provide notice prior to permanently laying off the Plaintiffs alleging violations of the Federal Worker Adjustment and Retraining Notification ("WARN") Act and the New York State Worker Adjustment

---

[30] *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 316 (2d Cir. 2021).

[31] *Boshears*, 76 F.4th 858.

10

and Retraining Notification ("NY WARN") Act (collectively referred to as "WARN Acts"); and (2) failure to pay No-Fault Separation Pay, alleging, *inter alia*, breach of contract, breach of implied covenant of good faith and fair dealing, tortious interference with a contract related to Defendants' failure to pay them their No-Fault Separation Pay, and Alter Ego against Defendant H. Ty Warner.

Defendant-Appellants Hotel 57 Services LLC, Hotel 57 LLC, TY Warner Hotels & Resorts LLC., and H. Ty Warner (collectively, the "Warner Defendants" or "Warner Appellants") and Defendant-Appellants FSR International Hotel, Inc. d/b/a Four Seasons Hotel and Resorts ("Defendant FSR"), (collectively, "Defendants" or "Appellants"), moved to compel arbitration, to dismiss the class claims, and to stay this matter.[32]

---

[32] While Defendants filed two separate appellate briefs, Warner Defendants' Brief and Defendant FSR's Brief, both dated August 16, 2023, in the interest of judicial economy, Plaintiff is filing one brief in opposition to both of Defendants' briefs as the arguments raised by Defendant FSR in the briefs overlap.

First, Defendants, in support of their appeal, rely on the EmPact Agreement that they claim that Plaintiffs signed.[33] But the EmPact Agreement specifically excluded from arbitration claims related to "'no-fault' termination" and "permanent layoffs," like the ones brought in this action. Rather than an arbitration agreement, the EmPact Agreement has a *non-arbitration clause* for claims related to permanent lay-offs or "no-fault" termination. As the district court received no evidence contradicting Plaintiffs' assertions that their furloughs of more than three years were "permanent layoffs" and no-fault terminations, the district court correctly found that Plaintiffs' claims were related to their permanent layoffs or their no-fault terminations, and thus were excluded from arbitration.

Further, as the district court correctly observed, the Class Action Waiver was not a standalone provision in the EmPact Agreement, but rather referred to those claims proceeding to arbitration under the

---

[33] While Defendant-Appellants submitted an incorrect copy of the EmPact Agreement below, JA-61-122, and Plaintiff-Appellees submitted the correct versions, JA-150-210, the Agreements are identical for the purposes of this appeal. The district court cited solely to the incorrect version submitted by Defendants, which can be found at JA-61-122. For the sake of accuracy, Plaintiff-Appellees have cited to both versions of the Agreement in this brief.

C.A.R.E. section of the EmPact Agreement that specifically excluded the claims asserted here.

The district court implicitly and correctly held that the question of arbitrability should not have been delegated to an arbitrator. Judge Rakoff's implicit decision was correct under the plain terms of the EmPact Agreement and under the precedent of this Court. The question of arbitrability may not be referred to an arbitrator unless there is "clear and unmistakable evidence" that the parties intended to delegate that question.[34] Here, the "clear and unmistakable" evidence in the EmPact Agreement points in the other direction: the EmPact Agreement specifically excludes from arbitration claims based on "permanent layoff" or "no-fault termination."[35]

Defendants' misguided argument that the EmPact Agreement's reference to arbitration rules—in a separate, inapplicable section of the agreement—can somehow constitute the required "clear and unmistakable" intent to delegate arbitrability runs contrary to well-

---

[34] *See DDK Hotels, LLC*, 6 F.4th at 317.
[35] JA-115.

13

established Second Circuit law.[36] A contract's reference to arbitration rules does not delegate the question of arbitrability to an arbitrator with respect to claims that are even arguably exempted from the provision incorporating the rules.[37] That is, while the C.A.R.E. section of the EmPact Agreement requires the use of the AAA Rules and those rules allow the arbitrator to determine arbitrability if delegated to the arbitrator, the issue of arbitrability has not been so-delegated, inasmuch as Step 6 directly and expressly excludes "permanent layoffs" and no-fault terminations, and exempts them from arbitration, so the analysis does not even move on to the applicability of the AAA Rules in the 14-part sub-sections governing arbitration. In other words, unless the claims at issue required arbitration, the rules governing arbitration do not even kick in. And the existence of the exemption itself means that there was no "clear and unmistakable" intent to delegate arbitrability. Defendants thus do not remotely satisfy their burden of showing "clear and unmistakable" evidence that the parties intended to

---

[36] *See DDK Hotels*, LLC, 6 F.4th at 320; *Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184, 195 (2d Cir. 2019); *NASDAQ OMX Grp., Inc. v. UBS Secs., LLC*, 770 F.3d 1010, 1032 (2d Cir. 2014).
[37] *See DDK Hotels*, LLC, 6 F.4th at 320; *NASDAQ OMX Grp., Inc.*, 770 F.3d at 1032.

delegate to an arbitrator the question of arbitrability of "permanent layoff" or "no-fault termination" claims.

Finally, this Court lacks jurisdiction under the Federal Rules of Appellate Procedure to decide Defendants' interlocutory appeal of the denial of their motion to strike class claims. The only basis for appellate jurisdiction is to review the interlocutory order denying Defendants' motion to compel arbitration under the Federal Arbitration Act and Defendants have not petitioned for leave to take an interlocutory appeal.

Accordingly, and for all the reasons set forth below, the Plaintiffs respectfully request that this Court deny Defendants' appeals in their entirety.

## Argument

### I.     Standard on motion to compel arbitration

"In deciding motions to compel, courts apply a standard like that applicable for a motion for summary judgment."[38] The summary judgment standard requires a court to consider all relevant, admissible evidence submitted by the parties and contained in pleadings,

---

[38] *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016).

depositions, answers to interrogatories, and admissions on file, together with … affidavits. Courts must draw all reasonable inferences in favor of the non-moving party…. If there is an issue of fact as to the making of arbitration agreement for arbitration, then a trial is necessary."[39]

Further, "a court must begin by answering two questions: (1) whether the parties agreed to arbitrate, and if so, (2) whether the scope of that agreement encompasses the asserted claims."[40] "The party seeking arbitration has the burden of establishing an agreement to arbitrate.[41]

In their briefs, Defendants repeatedly cite to cases that seem to indicate that the burden should be placed on Plaintiffs to show that the parties did not agree to arbitrate and that the scope of the arbitration agreement does not cover their claims. In other words, Defendants are claiming that there is a presumption in favor of arbitration. In support

---

[39] *Id.*

[40] *See Hines v. Overstock.com, Inc.,* 668 F.Supp.2d 362, 366 (E.D.N.Y. 2009), *aff'd,* 380 F. App'x. 22 (2d Cir. 2010) (summary order) (internal citations and quotation marks omitted).

[41] *See Johnson v. Parts Auth., LLC,* No. 16-CV-6852 (DLI) (RML), 2017 WL 9511079, at *3 (E.D.N.Y. Aug. 17, 2017), *report and recommendation adopted as modified,* No. 16-CV-6852 (DLI) (RML), 2017 WL 4402463 (E.D.N.Y. Sept. 30, 2017) (internal citations and quotation marks omitted)."

16

of their position, Defendants point to cases that cite the FAA provision that "[a] written provision ... to settle by arbitration a controversy ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[42]

Defendants also cite to opinions by the Supreme Court in which this provision, 9 U.S.C. § 2, is described as "a congressional declaration of a liberal federal policy favoring arbitration agreements."[43]

But as the Supreme Court clarified in the 2022 case of *Morgan v. Sundance, Inc.*, the phrase "liberal federal policy favoring arbitration agreements" "is merely an acknowledgment of the FAA's commitment to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts."[44] Or in another formulation: The policy is to make "arbitration agreements as enforceable as other contracts, but not more so."[45] Simply put, *Morgan* clarified that the FAA does not authorize the

---

[42] *See, e.g., AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 336, 131 S.Ct. 1740, 1744, 179 L.Ed.2d 742 (2011)

[43] *See, e.g., Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 24 (1983).

[44] *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418, 142 S.Ct. 1708, 1713, 212 L.Ed.2d 753 (2022).

[45] *Id.*

17

courts to invent arbitration-preferential rules.[46] Thus, the Court directed courts to "hold a party to its arbitration contract just as the court would to any other kind[, b]ut ... not devise novel rules to favor arbitration over litigation."[47]

Here, it is apparent that an agreement to arbitrate does not apply to those claims asserted in Plaintiffs' Complaint.

## II. The district court properly denied Defendant-Appellants' motion to compel arbitration of claims for permanent layoffs and no-fault terminations, which were expressly excluded from the arbitration agreement.

### A. The EmPact Agreement includes a non-arbitration clause, which through its plain language, excludes Plaintiff-Appellees' claims

While Defendants sought the enforcement of the EmPact Agreement, doing so required that the district court deny their motion to compel arbitration, as the EmPact Agreement bars arbitration for the types of claims brought by Plaintiffs in this action. Defendants attempt to obfuscate this issue by ignoring the EmPact Agreement's plain language that Plaintiffs and those similarly situated "may not seek

---

[46] *Id.*

[47] *Id.*

18

mediation or arbitration of a permanent layoff or 'no-fault' termination under Step 6 of C.A.R.E."[48]

The Defendants' reliance on the unsigned signature page's abbreviated description of the arbitration agreement is also completely misguided, as the signature page reiterated that a permanent layoff was not subject to C.A.R.E.[49] Even if Defendants were to argue that the signature page somehow contradicted the sections of the agreement excluding "permanent layoffs" and "no-fault terminations" from arbitration, which it does not, "it is generally accepted that ambiguous contract terms are construed against the drafter."[50]

Of note, Defendants appear to take the word "termination" out of context, claiming that any termination of employment mandates that all claims proceed to arbitration. That is patently false. Neither of Defendants' briefs provide a plausible explanation for why this Court

---

[48] *See* Empact Agreement, at JA-117 & 205.

[49] *See* EmPact Agreement at JA-117 & 205. The EmPact Agreement is not just the signature page, but rather the entire 61 pages of the EmPact Agreement, stating "the conditions contained in EmPact may be modified in writing from time to time by the Four Seasons Hotel New York as contemplated on page 2 of this contract" (*see* Empact Agreement, at JA-62 & 121 and JA-151 & 209).

[50] *See, e.g., Kerin v. Postal Serv.,* 116 F.3d 988, 992 (2d Cir. 1997).

19

should disregard the EmPact Agreement's clear statement that the Plaintiffs "may not seek mediation or arbitration of a permanent layoff or 'no-fault' **TERMINATION** under Step 6 of C.A.R.E."[51]

The carve-out of claims related to "no-fault" terminations and permanent layoffs was not an accidental oversight or a mistaken one-off. The carve-out was clear, unambiguous, and consistently repeated in the EmPact Agreement in multiple sections and on multiple pages.[52]

The C.A.R.E. section of the EmPact Agreement specifically excluded claims related to "permanent layoffs" from arbitration.[53] Then, under the "No-Fault Separation Pay" provision, the exclusion is reinforced.[54] Plaintiffs "may not seek mediation or arbitration of a permanent layoff or 'no-fault' termination under Step 6 of C.A.R.E."[55]

Defendants argue that the EmPact Agreement does not mandate that if an employee did not opt out, he or she was agreeing to arbitrate all disputes relating to termination of his or her employment. Defendants also argue that the only circumstance in which a

---

[51] *See* Empact Agreement, at JA-117 & 205 (emphasis added).
[52] *See* Empact Agreement, at JA-115, 117, 118, 203, 205 & 206.
[53] *See* Empact Agreement, at JA-115 & 203.
[54] *See* Empact Agreement, at JA-117 & 205.
[55] *Id.*

termination of Plaintiffs' employment would fall outside the scope of the EmPact Agreement's broad dispute resolution procedure is where a Hotel employee actually was paid "No-Fault Separation Pay." These are complete misrepresentations of the EmPact Agreement that, on its face, excludes the types of claims at issue in this action from arbitration.

The EmPact Agreement clearly states that an employment termination resulting from permanent layoff is not subject to arbitration under C.A.R.E. and an employee "may not seek mediation or arbitration of a permanent lay-off or "no-fault" termination under Step 6 of C.A.R.E."[56] To avoid any misinterpretation or confusion about claims related to permanent layoff, the EmPact Agreement also explicitly states that "I may not seek mediation or arbitration of a permanent layoff or 'no-fault' termination."[57] As such, the EmPact Agreement clearly prohibits certain claims, like the very ones alleged in Plaintiffs' Complaint, from being arbitrated.

In addition, "New York follows the well-established *contra proferentem* principle which requires that "equivocal contract

---

[56] *See* EmPact Agreement at JA-115, 117, 203 & 205.
[57] *See* EmPact Agreement, at JA-117 & 205.

provisions are generally to be construed against the drafter."[58] It cannot be disputed that Defendants drafted the agreement. "Moreover, under New York law a party seeking to enforce a contract must prove not only the existence of the contract, but also its terms."[59] A reasonable, and objective, interpretation of the EmPact Agreement would find that those claims alleged in the Complaint are excluded from arbitration.

"New York courts like the Supreme Court and Second Circuit in the FAA context follow " 'the rule ... that unless the agreement to arbitrate expressly and unequivocally encompasses the subject matter of the particular dispute, a party cannot be compelled to forego the right to seek judicial relief and instead submit to arbitration."[60] Defendants have not and cannot show that Plaintiffs agreed to arbitrate those claims alleged in the Complaint.

---

[58] *See Revson v. Cinque & Cinque, P.C.,* 221 F.3d 59, 67 (2d Cir.2000); *see also, accord Westchester Resco Co., L.P. v. New England Reins. Corp.,* 818 F.2d 2, 3 (2d Cir.1987) (per curiam); *McCarthy v. Am. Int'l Grp., Inc.,* 283 F.3d 121, 124 (2d Cir. 2002).
[59] *See Dreyfuss v. Etelecare Glob. Sols.-U.S. Inc.,* 349 F. App'x 551, 555 (2d Cir. 2009) (summary order).
[60] *See Pictet Funds [Eur.] S.A. v. Emerging Managers Grp., L.P.*, No. 14-CV-6854 SAS, 2014 WL 6766011, at *8 (SDNY Dec. 1, 2014).

The Warner Defendants concede in their brief that whether the parties have agreed to arbitrate is a question of state contract law.[61] As such, consistent with the allegations in the Complaint, New York contract law applies here. While Defendants claim that "The EmPact Agreement requires each Plaintiff to arbitrate "*any* dispute" he or she has "*relating to termination of [their] employment,*" that is simply not true.[62] Defendants further refuse to address the multiple portions of the EmPact Agreement that prohibit mediation/arbitration for permanent layoffs and no-fault terminations—the very claims Defendants sought to compel the parties to arbitrate.[63]

### B. A layoff exceeding six months is a permanent layoff and a no-fault termination; a permanent layoff cannot provide for a right of recall as permanent is forever

The EmPact agreement itself dictates that the phrase "permanent layoff," as it is used throughout the contract, should be "defined by law."[64] Since a "permanent layoff" was not defined in the agreement, the district court had to use outside sources such as the WARN Act and

---

[61] *See Schnabel v. Trilegiant Corp.*, 697 F3d 110, 119 (2d Cir. 2012); *see* Warner Def. Memo, at fn. 3, p. 9.

[62] Hotel 57 Defendants' Brief (ECF# 61) at 18.

[63] *See* EmPact Agreement at JA-115, 117, 203 & 205.

[64] *See* EmPact Agreement at JA-115 & 203.

23

New York WARN Act to determine whether to compel arbitration in this matter. A permanent layoff cannot provide for a right to recall as the plain meaning of permanent is "lasting or continuing for a very long time or forever; not temporary or changing."[65]

Using that as a starting point, the district court observed that the New York State WARN Act "defines furloughs extending more than six months as a 'permanent layoff' that triggers certain employer obligations."[66] Similarly, the district court observed that the federal WARN counterpart defines "a layoff exceeding [six] months" as a permanent "employment loss."[67]

"These statutory definitions, furthermore, dovetail with the plain meaning of permanent layoff."[68] Citing to *Webster's*, the district court observed that "[a] permanent layoff most often refers to 'the permanent termination of an employee for reasons unrelated to the employee's performance."[69] The district court then made the common-sense

---

[65] *See* "Permanent" (2023) *The Britannica Dictionary*. Available at: https://www.britannica.com/dictionary/permanent (Accessed Nov. 13, 2023).

[66] *Staley*, 2023 WL 4339678, at *2.

[67] *Id.*

[68] *Id.* at *3.

[69] *Id.*

24

observation that "seeing as the furlough has extended for over three years *and* defendants have not offered a performance-related reason for this furlough, it is fair to say that the plaintiffs have, at least as a threshold matter, shown that their claims are related to a 'permanent layoff.'"[70]

Faced with the district court's understanding that a three-year furlough is a permanent layoff, Defendants claim that the EmPact Agreement vests the hotel with the exclusive authority to deem what layoffs count as "permanent." The clause to which Defendants point provides that, "in the event of a permanent layoff or 'no fault' termination," an employee "is eligible for separation pay" and, upon acceptance of that pay, cannot "challenge [their] termination through" the contract's mediation/arbitration provisions." According to Defendants, it follows that, under the EmPact Agreement, a "permanent layoff" occurs if and only if the defendants offer the employee a separation payment and the employee accepts the offer.

As noted by the district court, Defendants get things exactly backwards: it is not the separation pay that triggers a "permanent

---

[70] *Id.* (emphasis in original).

25

layoff," it is the existence of a "permanent layoff" that entitles a terminated employee to "no-fault separation pay."[71] Moreover, the district court observed that the EmPact Agreement looks to the law for its definition of "permanent layoff," which in this case is defined by the WARN statutes.[72] In the district court's words, "If an employer were permitted to unilaterally determine which discharges count as temporary or permanent simply by withholding or offering separation pay—no matter how inaccurate the designation would be—they could thereby shirk whatever legitimate statutory and contractual responsibilities they owed to their employees."[73] In sum, there is no reason to disturb the district court's conclusion that "the parties intended the term 'permanent layoff' to refer to any discharge of employment that lasts longer than six months and has no definite end."[74]

---

[71] *Staley*, 2023 WL 4339678, at *3.

[72] *Id.*

[73] *Id.*

[74] *Id.*

26

III. **The claims in this action are related to Plaintiffs' permanent layoffs and no-fault terminations, and not any other type of termination of employment that would allow for arbitration**

"In determining whether a particular claim falls within the scope of the parties' arbitration agreement, [the Court] focus[es] on the factual allegations in the complaint rather than the legal causes of action asserted."[75] Here, the Plaintiffs' allegations are related to their alleged terminations of employment, however, those terminations are specifically "permanent layoffs" that are excluded under the EmPact Agreement's mediation/arbitration provision pursuant to C.A.R.E, and separation pay as a result of a "no-fault" termination.

As the EmPact Agreement clearly excludes claims related to "permanent layoffs" and "no-fault terminations," the question for the Court is if the claims brought in this action fall in either of those categories. This is an issue of fact under the motion to compel, which has a similar standard like that of a summary judgment motion.[76] If any issue of fact exists, the court must deny Defendants' Motion to Compel in its entirety.

---

[75] *See Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F2d 840, 846 (2d. Cir. 1987).

[76] *See Nicosia v. Amazon.com, Inc.*, 834 F3d 220, 229 (2d Cir. 2016).

27

### A. Plaintiff-Appellees have alleged claims for No-Fault Termination and Permanent layoff

Plaintiffs have alleged three claims related to Defendants' failure and/or refusal to pay Plaintiffs and those similarly situated No-Fault Separation Pay: (1) breach of contract; (2) tortious interference with a contract; and (3) alter-ego. The No-Fault Separation Pay section of the EmPact Agreement states:

> If I receive a permanent layoff with no right of recall or I am terminated for no fault, my termination will be considered 'no-fault.' I understand that I may not seek mediation or arbitration of a permanent lay-off or 'no fault' termination under Step 6 of C.A.R.E. However, in the event of a permanent layoff or 'no-fault' termination, I will be eligible for separation pay in accordance with the 'No-Fault Separation Pay Schedule' in effect at the time of my separation unless I have opted out by signing the 'Opt-Out Verification' attached to my EmPact. By accepting No-Fault Separation Pay, I am acknowledging that my termination was 'no-fault' and that I am not entitled to challenge my termination through the mediation/arbitration provisions of C.A.R.E.[77]

While Defendants can argue about whether Plaintiffs and those similarly situated are entitled to No-Fault Separation Pay, there can be

---

[77] S*ee* EmPact Agreement, at JA-117 & 205.

no dispute that the EmPact Agreement bars claims related to No-Fault Separation Pay from arbitration.

The language in this section clearly precludes arbitration of the claims alleged in the Complaint. The EmPact Agreement is clear that the No-Fault Separation Pay section does not condition the exclusion of arbitration on the acceptance of No-Fault Separation Pay. It plainly states: "I may not seek mediation or arbitration of a permanent lay-off or 'no fault' termination under Step 6 of C.A.R.E."[78] This sentence does not condition the exclusion of arbitration on the acceptance of No-Fault Separation Pay, despite Defendants' claims. As the district court correctly noted, a person who has received a no-fault termination is ineligible for arbitration. Accordingly, by accepting No-Fault Separation Pay, an individual has acknowledged that their termination was no-fault and claims related to their no-fault termination cannot be arbitrated. Defendants' failure to pay an employee their earned No-Fault Separation Pay would not change the nature of the no-fault termination. As the EmPact Agreement clearly states: "If I receive a permanent layoff with no right of recall or I am terminated for no fault,

---

[78] *See* EmPact Agreement, at JA-117 & 205.

29

my termination will be considered "no-fault."[79] Accordingly, Defendants cannot withhold the No-Fault Termination Pay to change the nature of the termination. By accepting that the termination was no-fault, the individual is not waiving arbitration, but acknowledging that their claims would be related to a no-fault termination, which is exempt from arbitration.

As Defendants cannot dispute that the claims for breach of contract, tortious interference with a contract, and alter-ego, are related to the No-Fault Separation Pay section of the EmPact Agreement, there is no basis to compel the arbitration of these claims. In fact, the EmPact Agreement requires that the Court find these claims cannot proceed to arbitration, but rather must proceed in Court.

### B. Plaintiff-Appellees' WARN Act claims are related to no-fault terminations and/or permanent layoffs

The federal WARN Act and the New York WARN Act define furloughs of six months or more as a permanent layoff.[80] The New York WARN Act defines an employment loss as follows:

---

[79] *See* EmPact Agreement, at JA-118 & 206.

[80] *See United Paperworkers Int'l Union & its local 340 v. Specialty Paperboard, Inc.,* 999 F.2d 51, 52 (2d Cir. 1993) (a "lay off" must exceed

30

(f) Employment loss.

> (1) The term employment loss means: (i) An
> employment termination, other than a discharge
> for cause, voluntary departure, or retirement; (ii)
> A mass layoff, as defined in § 921-1.1(i), that
> exceeds six months in duration; or (iii) A
> reduction in hours of work of more than fifty
> percent (50%) during each month of any
> consecutive six-month period.[81]

The New York WARN Act differentiates between a temporary and

a permanent layoff as follows:

> (d) For purposes of this provision, a "temporary
> layoff" is a mass layoff with a duration of less
> than a consecutive six-month period and a
> planned return of employees after the layoff
> period ends, which will not be deemed to be
> subject to the notice requirements set forth in
> this Part. A "permanent layoff" is a mass layoff
> that extends beyond a consecutive six-month
> period for which the employer must comply with
> the notice requirements in this Part from the
> time of the employment loss.[82]

Similarly, the Federal WARN Act defines an employment loss as:

> (i) an employment termination, other than a discharge for cause,
> voluntary departure, or retirement,

---

six months in duration to qualify as an "employment loss" under the
WARN Act); *see also,* 29 U.S.C. § 2101(a)(6)(c) (the term "employment
loss" means a reduction in hours of work of more than 50 percent during
each month of any 6-month period under the WARN Act).
[81] 12 NYCRR 921-1.1(f).
[82] 12 NYCRR 921-1.1(f)(1)(iii)(d).

(ii) a layoff exceeding 6 months, or

(iii) a reduction in hours of work of individual employees of more than 50% during each month of any 6-month period.[83]

As these claims are clearly defined by the New York and federal WARN Acts, and relate to no-fault terminations and/or permanent layoffs, they also are clearly excluded from arbitration.

As it is undisputed that Plaintiffs' layoffs exceeded six months, both federal and New York law recognize them to be permanent layoffs. Accordingly, the district court was correct in denying Defendants' motion to compel arbitration for these claims as well. There was no basis to compel arbitration for any of the claims alleged in the Complaint.

## C. Plaintiff-Appellees have not alleged that they were "constructively discharged"

Defendants insinuate that Plaintiff-Appellees may have been "constructively discharged" and therefore subject to the arbitration provisions of the EmPact Agreement, claiming that by signing the EmPact Agreement:

> each Plaintiff explicitly acknowledged, agreed, and promised (among other things):

---

[83] 20 C.F.R. § 639.3(f).

> Unless I have exercised my right to
> opt out, use the mediation/arbitration
> procedure described in C.A.R.E. as the
> exclusive method of resolving any
> dispute I may have relating to
> termination of my employment
> (including constructive discharge)
> and/or claims of employment
> discrimination, harassment, or
> wage/hour violations.[84]

But there is absolutely no basis to claim that Plaintiff-Appellees were constructively discharged. "Constructive discharge" has a specific meaning, and the standard for constructive discharge is whether "working conditions become so intolerable that a reasonable person would have felt compelled to resign."[85] This Court has stated, "[c]onstructive discharge occurs when an employer deliberately makes an employee's working conditions so intolerable that the employee is forced into resignation."[86] Constructive discharge requires deliberate action on the part of the employer; something beyond mere negligence or ineffectiveness is required.[87]

---

[84] Warner Defendants Brief (ECF# 61) at 7 (citing to JA-121; JA-124-27; JA-129-31; JA-133-36).

[85] *Pennsylvania State Police v. Suders*, 542 U.S. 129, 130 (2004).

[86] *Kader v Paper Software, Inc.*, 111 F.3d 337, 339 (2d Cir. 1997).

[87] *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62 (2d Cir. 2000).

33

Put another way, in a constructive discharge situation, rather than directly terminating an individual, the employer "intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily,"[88] which is not what happened here. Defendants have cited to no evidence in the record that Plaintiffs quit their employment, let alone that they were constructively discharged. Plaintiff-Appellees had their employment terminated by Defendants because their furloughs exceeded not just six months, but over three years. Tellingly, Defendants are claiming that Plaintiffs are not eligible for No-Fault Separation Pay or WARN Act payments because they are still on temporary furloughs, not because they quit or resigned their employment.  As such, Defendants cannot credibly claim that Plaintiffs' claims are related to constructive discharge and must be arbitrated. Accordingly, any mention of constructive discharge by Defendants has no bearing on this case.

---

[88] *Whidbee*, 223 F.3d at 73 (citing *Chertkova*, 92 F.3d at 89).

IV. **This Court lacks jurisdiction to hear Defendants' interlocutory appeal of the denial of their motions to strike Plaintiffs' class claims, inasmuch as Defendants have not petitioned for leave to take an interlocutory appeal**

While this Court has appellate jurisdiction to review the interlocutory order denying Defendants' motion to compel arbitration under the Federal Arbitration Act, this Court does not have jurisdiction to hear Defendants' appeal of the denial of their motions to strike the class claims. The Ninth Circuit's 2023 opinion in *Boshears v. PeopleConnect, Inc.*,[89] is almost directly on point. In *Boshears*, a former high school student brought an action against an entity that operated website marketing access to and reprints of yearbooks, alleging that the defendant had violated his right of publicity by using his photo on its website. The defendant filed a motion to compel arbitration and to dismiss. The motion to dismiss was based on a claim that the defendant was entitled to immunity under the Communications Decency Act. The district court denied the motion to compel arbitration and the motion to dismiss. On appeal, the Ninth Circuit reversed and remanded for further proceedings on the denial of the motion to compel arbitration,

---

[89] *Boshears*, 76 F.4th 858.

35

but found that it lacked jurisdiction to hear an interlocutory appeal of the denial of the motion to dismiss. Even though the order denying both motions appeared in the same document, the denial of the motion to dismiss did not constitute a "final judgment" so as to confer appellate jurisdiction.

Even stronger here, the Rules do not contemplate an interlocutory appeal of a denial of a motion to strike class claims. Under Fed. R. Civ. P. 23(f), the Rules contemplate the parties fully briefing a motion for class certification and after a decision on that motion, the losing party then having a right to petition for permission to take an interlocutory appeal of the granting or denial of a motion for class certification. In other words, the Rules contemplate an interlocutory appeal on issues of class certification only after the district court has fully analyzed any class-certification issues under Rule 23 and only after the losing party has sought leave from the Circuit. The district court here recognized that Defendants' motion to strike was premature and held as follows: "The Court therefore denies the defendants' motion without prejudice to its being re-raised at the class certification stage, where the Court may

36

benefit from additional discovery on this issue."[90] Thus, even if this Court had jurisdiction to hear Defendants' interlocutory appeal, such an appeal would not be ripe for consideration.

## V. Even if this Court were to find jurisdiction over Defendants' class-action-waiver appeal, the district court correctly held that Plaintiffs never waived their right to bring or participate in class actions related to their permanent layoffs or no-fault terminations

"[W]hen interpreting [a] contract [the court] must consider the entire contract and choose the interpretation [of the clause,] 'which best accords with the sense of the remainder of the contract.'"[91] Here, the EmPact Agreement's class/collective action waiver is only for those claims covered by C.A.R.E. Significantly, the class waiver is not a standalone clause like No-Fault Separation Pay, but a subsection of the C.A.R.E. arbitration agreement. Each one of the subsections in the arbitration agreement explains the rules and procedures for arbitration. The subsection directly before the class claim waiver is the waiver of the right to go to Court, related only to those claims allowed to go to arbitration as per the C.A.R.E. provision of the EmPact Agreement. That section states: "To the extent permitted by law, I understand that

---

[90] *Staley*, 2023 WL 4339678, at *6.
[91] *See Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992).

37

if I do not opt out of the mediation/arbitration provisions of C.A.R.E., I waive my right to have my case submitted to a court of law and decided by a judge or jury." This is clearly relating to the claims subject to the C.A.R.E. arbitration section only. Further, the following section, No-Fault Separation Pay also makes clear that claims for permanent lay-off or "no-fault" termination cannot be arbitrated under Step 6 of C.A.R.E. Therefore, the waiver of the right to go to Court subsection is only referencing those claims allowed to proceed to arbitration under C.A.R.E. The very next subsection, Waiver of Right to Submit Claim as Part of Class or Collective Action mirrors the language of the court waiver subsection. The subsection states:

> To the extent permitted by law, I understand that if I do not opt out of the mediation/arbitration provision of CARE, I waive my right to have my claims submitted as part of a class or collective action in court (whether I initiate a claim or I am invited to join a class or collective action), and I waive my right to have my claims submitted as part of a class arbitration. This waiver shall not affect or diminish the substantive remedies that I may be awarded by an arbitrator.[92]

---

[92] *See* EmPact Agreement, at JA-117, 118, 205 & 206.

38

This waiver not only reflects the language in the court-access waiver, but specifically references an arbitrator. Indeed, a logical reading of this clause shows that by agreeing to arbitrate those claims that allow arbitration under C.A.R.E., the individual also waives their right to participate in a class action for those claims.

Defendants' interpretation of the class waiver cannot be accurate. First, as the district court observed, "it would be strange to require employees like the plaintiffs, whose claims are excepted from mandatory arbitration under Step 6 of the CARE procedure, to expressly opt out of the procedure from which they are already exempt.[93]

Second, as the district court also observed, the general-litigation waiver and the class-action waiver contained in the arbitration clause are nearly identical. "But if we were to give the general-litigation waiver the same breadth that defendants ask us to apply to our reading of the class-action waiver … the waiver would swallow up the other provisions relating to the rights of terminated employees. In other words, the general-litigation waiver—as construed by the defendants—

---

[93] *Staley*, 2023 WL 4339678, at *5.

would bar anyone who did not opt out of the CARE procedure from bringing their claims in court, regardless of the substantive nature of their claims."[94]

The district court observed that would "plainly contradict[ ] the 'mediation arbitration' provision of the employment agreement, which allows individuals who did not opt of the CARE procedure to bring in court any termination claims related to a 'permanent layoff.' … Indeed, another provision of that same section explicitly bars employees terminated according to a 'permanent layoff' from arbitrating their claims, the necessary implication being that they must bring their legal challenge in court if they choose to pursue them."[95]

For the district court, "the fact that the class-action waiver appears in the section detailing the CARE arbitration procedures— rather than in a stand-alone section—provides additional support for the view that the waiver was meant to apply only to this delimited group of former employees."[96]

---

[94] *Id.*

[95] *Id.*

[96] *Id.* at *6 (citing *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 85 (2d Cir. 2002) (holding that, under New York law,

As below, "[t]he defendants contest this interpretation because, they say, it would render superfluous part of the class-action waiver. In their view, the general-litigation waiver and the CARE procedure already bar employees from bringing claims that are not exempt from the CARE procedure as a class—action lawsuit (as opposed to arbitration)."[97] But as the district court observed, [i]nterpreting the class-action waiver to do the same would make the waiver, as applied to claims brought in state or federal court, redundant. This argument, however, is self-refuting. If we were to adopt the defendants' view and construe the class-action waiver as applying to all claims brought by employees who did not expressly opt out of the CARE procedure, the class-action waiver would be duplicative of the general-litigation waiver."[98]

Therefore, the district court was correct to look solely to the EmPact Agreement itself in deciding that the class-action claims

---

"[c]aptions are relevant to contract interpretation"); *see also Coley v. Cohen*, 289 N.Y. 365, 45 N.E.2d 913, 917 (1942) (construing contractual language in light of the heading of the section in which it is contained)).
[97] *Id.* at *6.
[98] *Id.*

waivers only applied to those claims subject to the C.A.R.E. arbitration provision.

## VI.  Defendants' equitable estoppel claim is premature, because the Court has not compelled arbitration

There is no dispute over equitable estoppel.  As the district court has not compelled arbitration, there is no dispute before this Court about equitable estoppel.  Since the district court refused to compel arbitration, the equitable estoppel argument was not part of the district court's decision, and accordingly, there is no basis to consider an equitable estoppel argument.  Accordingly, Plaintiffs submit that any consideration of the issue of equitable estoppel is premature before the district court has considered the issue.

## VII.  The parties did not clearly and unmistakably delegate to an arbitrator the question of arbitrability of Plaintiffs' claims

The district court implicitly ruled that it was for the court, not an arbitrator, to decide whether Plaintiffs' claims were arbitrable. This ruling was correct. By law, the question of arbitrability is for the court

42

to decide unless the parties clearly and unmistakably evince their intent to delegate that question to an arbitrator.[99]

Here, the parties did not agree to delegate that question, let alone clearly and unmistakably so. To the contrary, the parties' agreement expressly mandates that "permanent layoff" and "'no-fault' termination" disputes cannot be decided by an arbitrator. Defendants identify no clear and unmistakable evidence that overcomes the clear contractual terms of the EmPact Agreement stating that Plaintiffs "may not seek mediation or arbitration of a permanent lay-off or 'no fault' termination . . . ."[100]

## VIII. The "clear and unmistakable evidence" is that the parties agreed not to delegate the question of arbitrability of "permanent lay-off" or "'no fault' termination" disputes

Defendants' attempt to refer the question of arbitrability to an arbitrator fly in the face of the clear terms of the EmPact Agreement. Threshold questions of arbitrability "presumptively should be resolved

---

[99] *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 947 (1995) (arbitrability was question for court where parties did not clearly agree that arbitrability would be decided by arbitrator).
[100] *See* Empact Agreement, at JA-117 & 205.

by the court and not referred to the arbitrator."[101] "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so."[102]

Courts apply ordinary principles of state contract law (here, New York law), and the party seeking to compel arbitration bears the burden of establishing the "clear and unmistakable" evidence of the parties' intent to delegate the question of arbitrability to an arbitrator.[103]

Here, the "clear and unmistakable evidence" in the EmPact Agreement shows that the question of arbitrability may not be submitted to the arbitrator: "I understand that I may not seek mediation or arbitration of a permanent lay-off or 'no fault' termination . . . ."[104] Submitting such a dispute first to an arbitrator to decide arbitrability would run directly contrary to these plain terms.

The prohibition of the EmPact Agreement against submitting "permanent lay-off or 'no fault' termination" to arbitration is broad: it

---

[101] *DDK Hotels, LLC*, 6 F.4th at 317; *see also, Lavvan, Inc. v. Amyris*, No. 21-1819, 2022 WL 4241192 (2d Cir. Sept. 15, 2022) (summary order).

[102] *DDK Hotels, LLC,* 6 F.4th at 317 (brackets omitted).

[103] *See Id.* (citing *NASDAQ OMX Grp., Inc.*, 770 F.3d at 1032).

[104] *See* Empact Agreement, at JA-117 & 205.

does not contain any carve-out for the question of arbitrability to be submitted to an arbitrator. Rather, Plaintiffs "may not seek mediation or arbitration of a permanent lay-off or 'no fault' termination . . . ."[105]

Employees having such disputes "may not seek mediation or arbitration of a permanent lay-off or 'no fault' termination" without qualification.[106] Bringing the dispute to an arbitrator to decide arbitrability would be "seek[ing] . . . arbitration", in contravention of the EmPact Agreement.

Thus, even without the strong default legal presumption that courts should decide the question of arbitrability,[107] the EmPact Agreement affirmatively establishes on its own terms that disputes regarding "permanent lay-off or 'no fault' termination" will not be submitted to arbitration. As such, Defendants' attempt to compel arbitration on the question of arbitrability must fail.

---

[105] *Id.*

[106] *Id.*

[107] *DDK Hotels, LLC*, 6 F.4th at 317; *see also*, *Lavvan, Inc.*, 2022 WL 4241192.

IX.   The EmPact Agreement does not incorporate the AAA rules with
      respect to Plaintiffs' claims

Defendants misguidedly rely on an inapplicable provision,

Paragraph 2 of the C.A.R.E. Section, and specifically that provision's

reference to the AAA rules, as somehow constituting "clear and

unmistakable" evidence of the parties' intent to delegate to an

arbitrator questions of arbitrability of disputes like the one here.[108]

That argument fails to account for the plain terms of those sections of

the agreement that specifically exclude "permanent lay-off or 'no fault'

termination" from being submitted to arbitration.[109]

This Court has repeatedly held that an arbitration provision's

incorporation of arbitration rules does not clearly and unmistakably

delegate the question of arbitrability to an arbitrator where, as here,

the claim at issue is excluded from the arbitration clause that

incorporates those rules.[110] Thus, when presented with an arbitration

provision that incorporates arbitration rules, the court must ask: Are

---

[108] JA-204.

[109] *See* Empact Agreement, at JA-115, 117, 118, 203, 205 & 206.

[110] *See DDK Hotels*, LLC, 6 F.4th at 321; *NASDAQ OMX Grp., Inc.*, 770
F.3d at 1032.

46

the claims at issue arguably exempted from the arbitration provision?[111]
If so, the provision's reference to arbitration rules does not clearly and
unmistakably establish the parties' intent that the arbitrability of such
claims should be submitted to an arbitrator, and the court is to decide
the issue of arbitrability of those claims, which the district court
correctly did here.

This Court's 2021 decision in *DDK Hotels, LLC v. Williams-
Sonoma, Inc.* is instructive.[112] In that case, the parties' contract
committed a defined set of "Disputed Matters" to arbitration by the
American Arbitration Association (AAA) "in accordance with" AAA
rules, which grant the arbitrator the power to resolve questions of
arbitrability.[113] This Court recognized, however, that the provision's
reference to the AAA rules would not commit to an arbitrator the
question of arbitrability of a particular claim, unless that claim was
deemed to "fall within the intended scope of arbitration."[114] That is, the
contract's application of the arbitration rules "turns on the conditional

---

[111] *See DDK Hotels*, LLC, 6 F.4th at 322; *NASDAQ OMX Grp., Inc.*, 770
F.3d at 1032, 1035-36.
[112] *DDK Hotels, LLC*, 6 F.4th 308.
[113] *Id.* at 319-20.
[114] *Id.* at 321 (quoting *NASDAQ OMX Grp., Inc.*, 770 F.3d at 1032).

premise" that the dispute at issue actually falls within the scope of the contract's arbitration clause.[115] If the arbitration clause does not cover a particular dispute, the arbitration rules "do not govern and no delegation of authority to the arbitrator to resolve questions of arbitrability arises."[116] Accordingly, similar to here, in *DDK Hotels*, LLC, because the dispute at issue did not fall within the scope of the arbitration clause, the clause's reference to the arbitration rules did not apply to that dispute, and the question of arbitrability was not earmarked for an arbitrator.[117] Here, the contract terms and "permanent lay-off or 'no fault' termination" claims at issue compel the same outcome.

Defendants do not cite, much less discuss, *DDK Hotels*. Instead, Defendants cite to five cases that are easily distinguishable, because in all of those cases, the arbitration agreements contained broad delegation provisions, which are not present here. Thus, in the first case cited by Defendants, a 2005 decision by this Court in *Contec Corp. v.*

---

[115] *Id.*

[116] *Id.*

[117] *See Id.*

48

*Remote So. Co., Ltd.*,[118] the parties agreed that "any controversy" "shall be determined by arbitration" under the AAA's Commercial Arbitration Rules. This language was found to clearly and unmistakably empower an arbitrator to decide issues of arbitrability. Here, in contrast, the parties specifically carved out disputes concerning "permanent lay-off or 'no fault' termination", so there has been no such delegation. Similarly, Defendants cite to a 2013 summary order by this Court in *Emilio v. Spring Spectrum L.P.*,[119] without noting that it is a summary order, but more importantly, without explaining that this Court found delegation of the issue of arbitrability because the parties had "agreed to arbitrate any and all claims, controversies or disputes . . . arising out of or relating to its agreement with [the plaintiff]."[120] Because *everything* was delegated to the arbitrator to decide and the arbitrator had the power to decide arbitrability under the JAMS rules, this Court found delegation. Again, that was not the case here. Next, Defendants cite to the Southern District of New York case of *UBS Securities LLC v.*

---

[118] *Contec Corp. v. Remote So. Co., Ltd.*, 398 F.3d 205 (2d Cir. 2005).
[119] *Emilio v. Spring Spectrum L.P.,* 508 F.App'x. 3 (2d Cir. 2013) (summary order).
[120] *Id.* at 5 (internal quotation marks omitted; emphasis added).

*Prowse,*[121] which allowed the agreement to be filed under seal, and

limited information about the scope of the arbitration was provided.

Nevertheless, the district court's passing statement that the arbitrator

should decide arbitrability is mere dicta, and Defendants have failed to

show how that case is similar to this one and should be controlling. In

the second-to-last case cited by Defendants on this subject, the

Southern District of New York case of *Int'l Eng. & Constr. S.A. v. Baker*

*Hughes*, the delegation language was broad, referring to an arbitrator

"Any and all disputes arising under or relating to" the agreement.[122]

Again, *everything* was delegated to the arbitrator to decide under AAA

Commercial Arbitration Rules. That is not the case here. Finally,

Defendants cite to the Southern District of New York case of *Murray v.*

*UBS Securities, LLC.*[123] Again, however, the case is distinguishable. In

*Murray*, the agreement required arbitration of "any dispute,

controversy or claim (including but not limited to those arising out of or

---

[121] *UBS Securities LLC v. Prowse*, No. 20CV217, 2020 WL 433859
(S.D.N.Y. Jan. 27, 2020).
[122] *Int'l Eng. & Constr. S.A. v. Baker Hughes*, 399 F.Supp.3d 194, 197
(2d Cir. 2019).
[123] *Murray v. UBS Securities, LLC*, No. 12 Civ. 5914, 2014 WL 285093
(S.D.N.Y. Jan. 27, 2014).

relating to this Agreement, the employment relationship between [Plaintiff] and [UBS Securities] or the termination thereof) will be settled by final and binding arbitration, unless prohibited by applicable law. The parties' agreement to arbitrate disputes includes, but is not limited to ... any [ ] statutory or common law claims."[124] Again, *everything* was delegated to the arbitrator to decide under JAMS and FINRA rules. Unlike here, there were no carveouts.

In sum, to make the argument that the question of arbitrability must be delegated to the arbitrator, Defendants have had to rely upon decisions with broad delegation provisions and ignore decisions by this Court that are directly on point. Indeed, this Court has addressed contracts that involve a "broad arbitration clause that the parties subjected to a carve-out provision," and the analysis is the same: If the dispute at issue "does not fall within the intended scope of arbitration," then a reference to arbitration rules does not delegate the question of arbitrability to an arbitrator.[125] Contrary to Defendants' argument, an arbitration clause subject to a carve- out provision is "not akin" to a

---

[124] *Id.* at *1.
[125] *NASDAQ OMX Grp., Inc.*, 770 F.3d at 1032.

51

broad arbitration clause that indiscriminately delegates to an arbitrator the question of arbitrability for all disputes between the parties.[126]

In the EmPact Agreement, the arbitration provisions are qualified and narrowed by the express prohibition against submitting disputes concerning "permanent layoff" and "'no-fault' termination" to arbitration. While the EmPact Agreement references the AAA rules, those rules do not apply—let alone clearly and unmistakably so—to disputes that are plainly excluded from arbitration. Defendants' argument for application of the AAA rules fails in the presence of "a carve-out provision that, at least arguably, covers the instant dispute."[127] The exclusion of disputes concerning "permanent layoff" and "'no-fault' termination" far exceeds that standard, as its carve-out terms clearly and squarely cover the instant dispute. Accordingly, the AAA rules do not apply to the arbitrability of Plaintiffs' claims.

Unlike Defendants' approach, this Court's precedent properly calls for analyzing what claims the parties agreed to arbitrate or submit to arbitration to determine arbitrability. Arbitration "is simply a matter of

---

[126] *Id.*; *see also DDK Hotels*, LLC, 6 F.4th at 321-23 (extensively citing and quoting *NASDAQ OMX Grp., Inc.* with approval).

[127] *NASDAQ OMX Grp., Inc.*, 770 F.3d at 1035-36.

contract between the parties; it is a way to resolve those disputes— but only those disputes—that the parties have agreed to submit to arbitration."[128] The court therefore must look to the entire agreement to discern the parties' intent. Here, that evidence thoroughly rebuts Defendants' position: the parties expressly excluded claims such as Plaintiffs' from the arbitration provision that references AAA's rules, and the parties expressly prohibited submitting disputes concerning "permanent layoff" and "'no-fault' termination" to arbitration.

## X. Since the parties did not delegate to an arbitrator the question of arbitrability of disputes concerning "permanent layoff" and "'no-fault' termination," the Supreme Court's decision in *Henry Schein, Inc.* does not apply

Defendants incorrectly seem to suggest that the Supreme Court's decision in *Henry Schein* provides authority for this Court to refer the question of arbitrability for claims expressly excluded from arbitration to an arbitrator, even in the face of clear and unmistakable evidence of the parties' intent to do so. That is not the law, and this Court has squarely rejected such arguments.[129] In *Henry Schein*, the Supreme Court merely held that when arbitrability has been delegated to an

---

[128] *First Options of Chi., Inc.*, 514 U.S. at 943.
[129] *Metro. Life Ins. Co.*, 919 F.3d at 195.

arbitrator, a court may not decide the arbitrability question even if that claim to arbitrability is "wholly groundless" on its face.[130]  The Supreme Court reaffirmed that on the threshold question of whether the parties did in fact delegate arbitrability to an arbitrator, such delegation must be established by "clear and unmistakable" evidence.[131] While the Supreme Court did not address whether the parties had actually delegated the question of arbitrability to an arbitrator,[132] on remand, the Fifth Circuit held that, as here, the parties had not delegated arbitrability to an arbitrator.[133]

This Court has held that": "The point of the *Henry Schein* opinion was that, where the parties have agreed to submit arbitrability to arbitration, courts may not nullify that agreement on the basis that the claim of arbitrability is groundless."[134]  Here, the district court did not nullify the agreement, but rather enforced the EmPact Agreement's

---

[130] *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527-28 (2019).
[131] *Id.* at 530 (citing *First Options of Chi., Inc.*, 514 U.S. at 944).
[132] *Id.* at 531.
[133] *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 282 (5th Cir. 2019) (affirming denial of arbitration).
[134] *Bucsek*, 919 F.3d at 195; *see also DDK Hotels*, LLC, 6 F.4th at 323 n.6.

provision barring arbitration of claims related to "no-fault termination" and "permanent layoff."

As such, there is "clear and unmistakable" evidence that the parties never intended to delegate the arbitrability of disputes concerning "permanent layoff" or "'no-fault' termination" to an arbitrator. On the contrary, requiring the parties to submit the claims which they unambiguously excluded from arbitration to an arbitrator to determine arbitrability would directly contradict the plain language of the EmPact Agreement. The evidence is clear and unmistakable that the parties unambiguously agreed that "permanent layoff" or "'no-fault' termination" claims may not be submitted to arbitration, and this Court should affirm the district court's decision denying the motion to compel arbitration.

## Conclusion

Respectfully, this Court should deny, in its entirety, the relief sought in Defendants' Motion to Compel Arbitration, including, *inter alia,* to dismiss the Class Claims and stay this action, as Plaintiffs' claims are not subject to arbitration or class waiver. Accordingly, this Court should allow Plaintiffs and those similarly situated to pursue

55

their claims in Court, and grant such other or further relief as the

Court deems appropriate.

Dated:      November 14, 2023
             Brooklyn, New York

                                   Respectfully Submitted,

                                   Bromberg Law Office, P.C.

                                   By: */s/ Brian L. Bromberg*
                                   Brian L. Bromberg

**Attorneys for**
**Plaintiff-Appellees Selena Staley,**
**Vivian Holmes, and Olive Ivey**

Brian L. Bromberg
Bromberg Law Office, P.C.
352 Rutland Road #1
Brooklyn, NY 11225
Tel: (212) 248-7906
Fax: (212) 248-7908
Email: brian@bromberglawoffice.com

Evan C. Brustein
Brustein Law PLLC
299 Broadway, 17th Floor
New York, NY 10007
Tel: (212) 233-3900
Fax: (212) 285-0531
Email: evan@brusteinlaw.com

Maya Risman
Risman & Risman, P.C.
299 Broadway, 17th Floor
New York, NY 10007
Tel: (212) 233-6400
Email: mrisman@risman-law.com

### Certificate of Compliance
### With Type-Volume Limitation, Typeface Requirements
### And Type Style Requirements

1.     This brief complies with the type-volume limitation of Local

Rule 32.1(a)(4) because:

> This brief contains 10,432 words, excluding the
> parts of the brief exempted by Fed. R. App. P.
> 32(f).

2.     This brief complies with the typeface requirements of Fed. R.

App. P. 32(a)(5), and the type style requirements of Fed. R. App. P.

32(a)(6) because:

> This brief has been prepared in a proportionally
> spaced typeface using Microsoft Office Word
> 2016, in Century, font size 14.

Dated:     Brooklyn, New York
           November 14, 2023

                              Respectfully submitted,

                              Bromberg Law Office, P.C.
                              Attorneys for Plaintiff-Appellees


                              By:     */s/ Brian L. Bromberg*
                                      Brian L. Bromberg

57